1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

L.P., on behalf of Z.P.S., a minor,

CASE NO. C13-1670JLR

11

Plaintiff,

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT

12

v.

13

LAKE WASHINGTON SCHOOL
DISTRICT,

14

Defendant.

15

## I.    INTRODUCTION

16

17 Before the court are:  (1) Plaintiff L.P.'s motion for summary judgment (L.P.'s

18 Mot. (Dkt. # 11), and (2) Defendant Lake Washington School District's ("the District")

19 cross-motion for summary judgment (Dist. Mot. (Dkt. # 10)).  L.P. alleges that she was

20 the prevailing party under the Individuals with Disabilities Education Act ("IDEA"), 20

21 U.S.C. § 1415(i)(3)(B), in her administrative proceeding against the District for

22 procedural and substantive violations of the IDEA, and therefore is entitled to an award

ORDER- 1

1   of attorney's fees and costs in the total amount of $34,447.00.  (*See generally* Compl.

2   (Dkt. # 1); L.P.'s Mot.)  The District asserts that L.P. is not a prevailing party under the

3   IDEA and that, even if she is a prevailing party, any award of fees should be reduced on a

4   variety of grounds so as to negate any award at all.  (*See generally* Dist. Mot.)  The court

5   has considered the parties' cross-motions, all submissions filed in support of and

6   opposition to each motion, the balance of the record, and the applicable law.  Having

7   heard oral argument on May 16, 2014, and being fully advised, the court GRANTS in

8   part and DENIES in part each motion.  The court finds that L.P is a prevailing party

9   under the IDEA, but awards only a portion of the fees she has requested.

## II.    BACKGROUND

11          L.P. is the mother and sole custodian of Z.P.S., a child with disabilities as a result

12   of a stroke suffered during infancy.  (Compl. (Dkt. # 1) ¶¶ 3, 5.)  Z.P.S. attended an

13   elementary school within the District.  (*Id.* ¶ 4; Dist. Mot. at 2.)  Z.P.S. received a number

14   of accommodations pursuant to an Individualized Education Plan ("IEP").  L.P. removed

15   Z.P.S. from the school in December 2011, during Z.P.S.'s second grade year.  (L.P.'s

16   Mot. at 6; 3/6/14 Sullivan Decl. (Dkt. # 10-1) ¶ 3, Ex. A ("Admin. Order") at 18.)  On

17   July 13, 2012, L.P. filed a Due Process Hearing Request with the Office of the

18   Superintendent of Public Instruction ("OSPI").  (*Id.* at 1.)  The District also filed a Due

19   Process Hearing Request with OSPI related to L.P. on December 4, 2012.  (*Id.*)  The two

20   cases were consolidated, a hearing was held on February 5-6, 11-12, 15, and 19, 2013,

21   and the Administrative Law Judge ("ALJ") issued her Findings of Fact, Conclusions of

22   Law, and Order on May 17, 2013.  (*Id.* at 1, 82.)

On January 17, 2013, prior to the due process hearing, the District sent L.P. a written settlement offer via email. (3/6/13 Sullivan Decl. Ex. E.) The District offered L.P. $1,800.00 in exchange for withdrawal of L.P.'s due process hearing request. (*Id.*) L.P. declined the offer. (3/6/13 Sullivan Decl. ¶ 7.)

L.P.'s due process hearing request raised claims concerning the District's special education programming for Z.P.S. during the 2011/2012 and 2012/2013 school years. The ALJ determined that there were three overarching issues for the due process hearing: (1) whether the District violated the IDEA and denied Z.P.S a free appropriate public education ("FAPE") beginning June 1, 2011, (2) whether L.P. is entitled to her requested remedies, and (3) whether the District's evaluation of Z.P.S. was appropriate and, if not, whether the District should pay for an independent education evaluation ("IEE") of Z.P.S. (3/6/14 Sullivan Decl. ¶ 5, Ex. D at 3-6.) The ALJ ruled that L.P. had the burden of proof on the first two issues, but that the District had the burden of proof on the last issue because it had filed its own due process complaint to avoid conducting an IEE. (Admin. Order at 51, ¶ 2.)

The ALJ broke the first issue down into eight subparts, some of which the ALJ further subdivided. Thus, the ALJ considered whether the District denied Z.P.S a FAPE by: (1) failing to appropriately evaluate Z.P.S. (with 14 further subparts); (2) refusing to amend Z.P.S's IEP until it completed Z.P.S's three-year reevaluation, (3) failing to provide the least restrictive environment for Z.P.S. by reducing Z.P.S.'s time in general education; (4) failing to implement Z.P.S.'s IEPs by providing inadequate paraeducator support; (5) failing to adopt IEPs in or after June 2011 (with 13 further subparts); (6)

failing to adopt an appropriate IEP in December 2012 (with six further subparts); (7)

violating procedural requirements in or after June 2011 (with five further subparts).  (*Id.*

at 3-5.)   Under this issue, the ALJ also considered whether L.P.'s private tutoring

program, including instruction at Foundations for Learning Behavior, has been and is

appropriate.  (*Id.* at 5.)  When counting all subparts and subparts of subparts, the first

issue (whether the District violated the IDEA by denying Z.P.S a FAPE) comprises a

total of 42 sub-issues.  (*See id.*; *see* Dist. Mot. at 6 (asserting the existence of 43 separate

issues, which includes whether the District should pay for an IEE of Z.P.S. as described

below); Dist. Resp. at 4-5 (providing a chart of the issues and sub-issues itemized by the

ALJ).)  The ALJ, however, clarified that L.P. did not need to prove "each of the itemized

allegations" listed by the court "in order to prevail on any given issue."

Of these 42 sub-parts, L.P. prevailed on three.  The ALJ concluded that the

District violated the IDEA and denied Z.P.S. a FAPE by (1) "failing to evaluate [Z.P.S.]

within 35 school days of the written consent provided by [L.P.] on May 7, 2012,"  (2)

"conditioning [Z.P.S.'s] evaluation on [L.P.] providing authorization to exchange

information with other evaluators," and (3) "failing to review [Z.P.S.'s] IEP not less than

annually." (Admin. Order at 82.)  The ALJ concluded that "[t]he District did not

otherwise deny [Z.P.S.] a FAPE." (*Id.*)

With respect to the second overarching issue—L.P.'s remedies, the ALJ identified

four primary sub-issues:  (1) whether L.P. was entitled to compensatory education to

compensate for the time L.P. did not attend school due to health risks, including (a)

speech and language services, (b) occupational therapy, and (c) academic tutoring; (2)

1 whether L.P. is entitled to reimbursement for private tutoring and related services since

2 February 16, 2012; (3) whether L.P. is entitled to an order finding that the educational

3 program that she proposed on December 17, 2012, is appropriate and requiring the

4 District to implement that proposal for one year beginning March 1, 2013; and (4)

5 whether L.P. is entitled to any other equitable remedies, as appropriate.  (3/6/14 Sullivan

6 Decl. Ex. D at 6.)

7        L.P. partially prevailed in obtaining the remedies she requested.  The ALJ ordered

8 the District to provide Z.P.S. with a variety of "compensatory education services,"

9 including:  1,200 minutes of writing instruction, 2,040 minutes of math instruction, 1,200

10 minutes of reading instruction, and 680 minutes of adaptive skills instruction.  (Admin.

11 Order at 82.)  In addition, if L.P. reenrolled Z.P.S. in the public elementary school, the

12 ALJ ordered the District to conduct the classroom evaluation, program review, and

13 functional behavior assessment which were missing from the 2012 reevaluation, and to

14 consider private provider information from the parent.  (*Id.*)

15        The ALJ did not subdivide the third overarching issue at stake in the hearing—

16 whether the District should pay for an IEE of Z.P.S.  The District (which had the burden

17 of proof) prevailed on this issue.  The ALJ ruled that L.P. was not entitled to an IEE of

18 Z.P.S.  (*Id.*)

19        In the ALJ's findings of fact, conclusions of law, and order following the due

20 process hearing, the ALJ found that L.P. "was not truthful when she reported to the

21 District on multiple occasions that she was keeping the Student home from school

22 beginning in December 16, 2011, on the advice of his doctor, until it was safe for him to

ORDER- 5

return to school." (Admin. Order at 6, ¶ 1.) The ALJ found that L.P. "did not keep [Z.P.S.] home [from school] based on the advice of his doctor," and that "[b]ecause [L.P.] repeatedly told the District she was acting on doctor's advice during the time period she claimed to have received that advice, it is found that she was being untruthful with the District when she made these claims." (*Id.* at 51, ¶ 300.) In addition, the ALJ found that "[o]n other issues, [L.P.'s] testimony or beliefs proved to be unreliable or incorrect, although it cannot be concluded whether this was due to a lack of memory, a lack of understanding, or untruthfulness." (*Id.* at 6-7, ¶ 1.)

Over the District's objection, L.P. requested multiple continuances of the due process hearing so that the parties could complete the IEP reevaluation process for Z.P.S. (3/6/14 Sullivan Decl. Exs. B, C.) L.P. sought the continuances so that the parties could potentially resolve their dispute following the reevaluation process or so that she could amend her complaint so that it could be consolidated with the District's complaint for purposes of the due process hearing. (3/6/14 Admin. Order at 66, ¶ 51.) At the reevaluation feedback meeting on November 20, 2012, L.P. did not ask the District to consider any additional information or to contact third-parties such as Z.P.S.'s private school teachers or tutors, his pediatrician, or other service providers. (*See id.* at 65-66, ¶¶ 46-51.) The ALJ found that, in the context of this case, "it was disingenuous for [L.P.] not to request the District to consider information from her private providers at the

1  reevaluation feedback meeting, if not before, and then . . . [to] amend her Complaint to

2  allege that the District failed to contact them." (*Id.* at 66, ¶ 51.)[1]

3        The District asserts that it could have provided the 85.33 total hours of

4  compensatory education that the ALJ ordered the District to provide to Z.P.S. for as little

5  as $1,715.13 (3/6/14 Sullivan Decl. ¶ 10), which is less than the $1,800.00 settlement it

6  offered to L.P. prior to the due process hearing. The District argues that it could have

7  provided the required compensatory education for this amount by utilizing a substitute

8  teacher employed at a rate of $20.10 per hour. (*Id.* ¶ 9.) The District, however, has since

9  disclosed that it actually paid teachers providing the required compensatory education to

10  Z.P.S. from $37 to $49 per hour and acknowledged that the cost of providing the

11  compensatory education ordered by the ALJ had already exceeded $1,800.00 as of

12  February 11, 2014. (3/6/14 George Decl. ¶ 16, Ex. 9.) The District has also stipulated

13  that "a public education . . . generally is worth more to the student, in broad terms, than

14  the costs incurred by the District in delivering it." (*Id.*)

15        Following the parties' due process hearing, the District declined to voluntarily

16  reimburse L.P. for her attorney fees. (3/6/14 George Decl. (Dkt. # 11-1) ¶ 15.) L.P.

17  responded by filing this action seeking reimbursement of a portion of her fees. (*See*

18  *generally* Compl.) L.P. seeks total fees of $34,447.00. (3/1/14 George Decl. ¶ 18.) This

19  amount reflects the exclusion of more than 51 hours of attorney time. (*Id.*) L.P. did not

20   

21      [1] The ALJ carefully limited this conclusion to "the unique facts of this case," and cautioned that it "should not be construed to generally require parents to raise issues on their own during the course of an evaluation in order to be eligible for a remedy." (Admin. Order at 66,

22  ¶ 51.)

include time spent specifically on unsuccessful claims, including L.P.'s request to order a partial placement at Z.P.S.'s private school and L.P.'s allegation that the District failed to offer a FAPE prior to June 2012 or after December 2012, and non-compensable activities, such as IEP and evaluation meetings and settlement discussions.  (*Id.* ¶¶ 6-7.)

The requested $34,447 in fees includes reimbursement for :  (1) 100 % of 113.9 hours necessary to prosecute the due process case, including reviewing the records, drafting the complaint, reviewing and responding to discovery (including legal research), participating in required prehearing conferences, clarifying issue for the court, discussing scheduling, and preparing for and participating in the trial, (2) 10 0% of a few miscellaneous multi-task items totaling 17 hours, (3) 100 % of 13.7 hours spent researching and responding the District's discovery motion which was denied by the ALJ, (4) 100 % of the 3.7 hours spent on a motion for continuance to complete an evaluation and update the IEP, (5) 33 % of the 28.3 hours spent on the summary judgment motion, which was granted as to one of three claims concerning evaluation delays, and (6) 50 % of the 29.2 hours spent on the post-hearing brief. [2]  (*Id.*)

In sum, the requested $34,447.00 in fees includes (1) 148.3 attorney hours at $200.00 per hour, totaling $29,660.00; (2) 28.3 attorney hours at $200.00 per hour, totaling $5,660.00, but reduced to $1,867.00 to reflect a 33 % degree of success; and (3)

---

[2] L.P.'s fee request also includes requests for portions of billing entries describing multiple tasks from which L.P.'s attorney tried "to reconstruct how much time was devoted to [certain] compensable tasks" or "used [her] best judgment to estimate in good faith what portion of the total time is attributable to [compensable] tasks."  (3/6/14 George Decl. ¶ 8.)

1  29.2 attorney hours at $200.00 per hour, totaling $5,840, but reduced to $2,920 to reflect

2  a 50 % degree of success.  (*Id.* ¶ 18.)  The District has declined to reimburse L.P. for any

3  of her attorney's fees.  (*See* Dist. Mot. at 1-2.)[3]

### III.    ANALYSIS

**A.  Standards on Summary Judgment**

Summary judgment is appropriate if the evidence, when viewed in the light most

favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of

L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

showing there is no genuine issue of material fact and that he or she is entitled to prevail

as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her

burden, then the non-moving party "must make a showing sufficient to establish a

genuine dispute of material fact regarding the existence of the essential elements of his

case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477

F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in

_____

[3] In their dueling motions and related submissions, the parties spend considerable portions of their briefs rehashing much of the underlying dispute that they previously litigated before the ALJ.  That discussion is not material with respect to L.P.'s demand for partial reimbursement of her attorney fees or the parties' cross motions for summary judgment concerning those fees.  This action is not an appeal of the ALJ's decision.  Indeed, the time to appeal the ALJ's order by bringing a civil action in federal court has long passed.  *See* 20 U.S.C. § 1415(i)(2)(B) (requiring party aggrieved by administrative decision to bring civil action within 90 days).  Here, the court is only concerned with the issue of attorney's fees under the IDEA, 20 U.S.C. § 1415(i)(3)(B), and facts material to that issue.  With respect to the attorneys' fee issue, there are no genuine material factual disputes.

1    the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378

2    (2007).  Here, the parties have filed cross motions for summary judgment and agree that

3    their dispute concerning L.P.'s attorney's fees is appropriate for resolution on summary

4    judgment.  (JSR (Dkt. # 7) at 4 ¶ 11 ("The parties do not anticipate a need for trial.  The

5    parties believe that the issues before the court are purely legal and can be disposed of on

6    cross motions for summary judgment.").)

7    **B.  L.P. is a Prevailing Party under the IDEA**

8        Under the IDEA, "the court, in its discretion, may award reasonable attorneys'

9    fees as part of the costs . . . to a prevailing party who is the parent of a child with a

10   disability."  20 U.S.C. § 1415(i)(3)(B); *see also Los Angeles Unified Sch. Dist.*, 461 F.3d

11   1114, 1117 (9th Cir. 2006).  A "prevailing party" is a party who "succeed[s] on any

12   significant issue in litigation which achieves some of the benefit the [party] sought in

13   bringing the suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted).  To

14   be considered a "prevailing party" a party must show that the judgment resulted in a

15   "material alteration of the legal relationship of the parties."  *Shapiro v. Paradise Valley*

16   *Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004) (citing *Buckhannon Bd. &*

17   *Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 598 (2001)).  A

18   change in the parties' legal relationship occurs when the court orders relief on the merits.

19   *Buckhannon*, 532 U.S. at 603-04 ("[A] 'prevailing party' is one who has been awarded

20   some relief . . . . [E]nforceable judgments on the merits . . . [are] necessary to permit an

21   award of attorneys' fees.");  *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) ("Respect for

22   ordinary language requires that a plaintiff receive at least some relief on the merits of his

ORDER- 10

1    claim before he can be said to prevail."); *see, e.g., Park v. Anaheim Union High Sch.*

2    *Dist.*, 464 F.3d 1025, 1035 (9th Cir. 2006) (finding the legal relationship changed where

3    defendant school district was ordered to provide plaintiff with compensatory education).

4           The District asserts that L.P. is not a prevailing party because she "achieved none

5    of the benefit she sought in pursuing the due process hearing."  (Dist. Mot. at 10.)  This

6    statement is disingenuous.  Although L.P.'s overall success was undeniably limited, the

7    ALJ's order is clear that she prevailed on certain issues and was awarded relief.  (Admin.

8    Order at 82.)  The standard to qualify as a prevailing party under § 1415 is minimal.  *C.D.*

9    *v. Capistrano Unified Sch. Dist.*, No. SACV 10-0185 AG (MLGx), 2011 WL 1326905, at

10   *2 (C.D. Cal. Mar. 31, 2011).  A prevailing party need only to have succeeded on "any

11   significant issue."  *Park*, 464 F.3d at 1034.  When the plaintiff has succeeded on at least

12   one point, attorney's fees may be properly denied only when "the plaintiff's success on a

13   legal claim can be characterized as purely technical or de minimis."  *Id.* at 1036 (quoting

14   *Kletzelamn v. Capistrano Unified Sch. Dist.*, 91 F.3d 68, 71 (9th Cir. 1996)).

15          Here, L.P. succeeded on more than one point and her success cannot be

16   characterized as purely technical or de minimis.  The court finds that she is a "prevailing

17   party" under § 1415.  The ALJ ruled that L.P. prevailed on three sub-issues, awarded

18   Z.P.S. compensatory education services, and (in the event Z.P.S. returned to school)

19   ordered the District to conduct the classroom evaluation, program review, and functional

20   behavior assessment that were missing from the 2012 reevaluation and to consider private

21   provider information from the parent.  Because the ALJ "order[ed] relief on the merits,"

22   *Shapiro*, 374 F.3d at 865, there was a "material alteration of the legal relationship of the

1 parties," *Buckhannon*, 532 U.S. at 603-04.  Thus, L.P. is a prevailing party for purposes

2 of an attorneys' fees award under the IDEA.

3 **C.  The District's Settlement Offer Does Not Preclude an Award of Fees**

4     A prevailing party, however, may not be awarded attorneys' fees for services

5 rendered after a written settlement offer is made if:  (i) the offer is made within the time

6 prescribed by Federal Rule of Civil Procedure 68 or, in the case of an administrative

7 proceeding, at any time more than 10 days before the proceeding begins; (ii) the offer is

8 not accepted within 10 days; and (iii) the court or administrative hearing officer finds that

9 the relief finally obtained by the parents is not more favorable to the parents than the

10 offer of settlement.  20 U.S.C. § 1415(i)(3)(D)(i).  However, even if the District

11 demonstrates the above conditions, a prevailing parent may nonetheless obtain attorneys'

12 fees if the parent was "substantially justified" in rejecting the offer.  20 U.S.C.

13 § 1415(i)(3)(D).  Here, it is undisputed that L.P. rejected a settlement offer and proceeded

14 to a due process hearing.  The issue boils down to whether the District's offer of

15 settlement was more favorable than the relief L.P. obtained from the ALJ.

16     The District argues that its January 17, 2014, offer to settle with L.P. for $1,800.00

17 was greater than the value of the ALJ's award, and that therefore the court may not award

18 L.P. any attorneys' fees following the date of its offer.  (Dist. Mot. at 11- 13.)  The

19 District argues that it could have utilized a substitute teacher certified to teach special

20 education employed by the District at a rate of $20.10 per hour to provide the

21 compensatory education tutoring services that the ALJ ordered.  (Dist. Mot. at 13; 3/6/14

22 Sullivan Decl. ¶ 9.)  At that rate, the District could have provided the 85.33 total hours of

1   tutoring ordered by the ALJ for $1,715.13.  (*Id.* ¶ 10.)  Because $1,715.33 is less than the

2   $1,800.00 the District offered to L.P. in settlement, the District asserts that L.P. is

3   prohibited under 20 U.S.C. § 1415(i)(3)(D) from recovering any attorneys' fees

4   subsequent to January 17, 2014.  (Dist. Mot. at 11-14.)

5          However, in response to L.P.'s discovery requests, the District admits that it

6   actually paid two different teachers $48.98/hour and $37.12/hour to provide

7   compensatory education services to L.P.  (3/6/14 George Decl. Ex. 1 (Ans. to Int. No. 4).)

8   Further, the District stipulated that as of February 11, 2014, it had already incurred costs

9   in excess of $1,800.00.  (*Id.* Ex. 9.)  Thus, although it may have been theoretically

10  possible for the District to provide the compensatory education services to Z.P.S. at a cost

11  less than $1,800.00, this is not in fact what it cost the District.  The court does not base its

12  rulings on theoretical possibilities when reality differs from theory in material respects.

13  Further, the District stipulated that "a public education, including one provided by the

14  District, can be and generally is worth more to the student, in broad terms, than the costs

15  incurred by the District in delivering it."  (*Id.*)  This admission is critical because the

16  IDEA's plain statutory language requires the court to ask whether the value of the relief

17  awarded is "more favorable *to the parents* than the offer of settlement."  20 U.S.C.

18  § 1415(i)(3)(D)(i)(III).  Here, the District has admitted that it is.  (3/6/14 George Decl. ¶

19  16, Ex. 9 (stipulating that "a public education  . . . generally is worth more to the student,

20  in broad terms, than the costs incurred by the District in delivering it.").)  The court,

21

22

1  therefore, concludes that the District's offer of settlement does not preclude an award of

2  attorneys' fees to L.P. under the IDEA.[4]

3  **D. Attorneys' Fees Award under the IDEA**

4  Having found that L.P. is a prevailing party and that an award of fees is not

5  precluded by the District's settlement offer, the court must next determine the amount of

6  fees to which L.P. is entitled.  The determination of prevailing party status does not

7  automatically entitle a party to a full recovery of fees or even any fees at all.  *See Farrar*

8  *v. Hobby*, 506 U.S. 103, 115 (1992) ("In some circumstances, even a plaintiff who

9  formally 'prevails' . . . should receive no attorney's fees at all.").  The court rejects the

10  District's assertion, however, that this case represents a circumstance in which no award

11  at all is warranted.

12  Nevertheless, "[a] reduced award is appropriate if the relief, however significant,

13  is limited in comparison to the scope of the litigation as a whole."  *Hensley v. Eckerhart*,

14  416 U.S. 424, 440 (1983).  Thus, the court must analyze the "degree of success" achieved

15  in order to determine the amount of attorneys' fees to which L.P. is entitled.  *See Aguirre*

16  *v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1119-20 (9th Cir. 2006) (applying *Hensley* to

17  IDEA claims).  Although a district court has "wide latitude" to exercise discretion in

18  evaluating attorneys' fees in IDEA cases (*id*. at 1122 (Pregerson, J. concurring)), the

19

20  _____

    [4] As a part of its response to L.P.'s motion for summary judgment, the District moved to
21  strike L.P.'s reference to a subsequent settlement offer that the District extended and L.P.
    accepted after the District had partially performed under the ALJ's order.  (Dist. Resp. at 10-11.)
22  The court, however, did not consider this evidence in resolving the foregoing issue, and
    therefore, the court denies the District's motion as moot.

ORDER- 14

1   Supreme Court has provided some guidance on how to correlate the degree of success the

2   party achieved with the amount of fees to be awarded:

3
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours
4
> reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these
5
> circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. If, on
6
> the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a
7
> reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in
8
> good faith.

9   *Hensley*, 461 U.S. at 435-36. As alluded to by the Court, in some cases the issues

10  presented are readily separable and thus easily susceptible to a straightforward degree-of-

11  success calculation. In other cases, however, the issues are not so distinct and the court

12  must factor in "the extent of relief ordered by the ALJ" in order to determine the degree

13  of success. *S.A. v. Patterson Joint Unified Sch. Dist.*, 2010 WL 3069204, at * 13 (E.D.

14  Cal. Aug. 2, 2010).

15          Here, there is no doubt that L.P. attained only limited success. She argues that the

16  ALJ's breakdown of the overarching three issues presented for determination at the due

17  process hearing into 43 separate sub-issues was an artificial exercise and that her true

18  success at the hearing cannot be equated to a mathematical ratio of 3 out of 43 issues.

19  The court agrees to some extent that this ratio would underestimate her success, but there

20  is no way principled way to describe her success as anything but limited in nature. Thus,

21  the court must now determine an appropriate reduction of her fee award.

22

1        When determining an appropriate reduction, the district court has discretion to

2 exercise its equitable judgment and may "attempt to identify specific hours that should be

3 eliminated, or it may simply reduce the award to account for the limited success."

4 *Hensley*, 461 U.S. at 436-37.  Where the requested fees are based on voluminous billing

5 records, the district court need not provide an hour-by-hour analysis of the fees.  *Gates v.*

6 *Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citations omitted).  Thus, "when faced

7 with a massive fee application the district court has the authority to make across-the-

8 board percentage cuts either in the number of hours claimed or in the final lodestar figure

9 as a practical means of trimming the fat from a fee application."  *Id.* (citations omitted)

10 (internal quotation marks omitted).  Regardless of how the court reduces the fee award,

11 the court must remain cognizant of the relationship between the degree of success and the

12 amount of the fee awarded and must provide a "concise but clear explanation of its

13 reasons for the fee award."  *Hensley*, 461 U.S. at 437.

14        In formulating her $34,447.00 fee request, L.P. recognized the limited nature of

15 her success and initially eliminated 51 hours that she acknowledged relate only to

16 unsuccessful claims or other non-compensable time.  (3/6/14 George Decl. ¶¶ 6-7, 18.)

17 She also reduces the percentage of hours requested on her motion for summary judgment

18 by two-thirds because she succeeded on only 1 out of 3 claims and the percentage of

19 hours requested for her post-hearing brief by half because she succeeded on only 2 out of

20 4 issues.  The court accepts these reductions and will use L.P.'s $34,447.00 as its starting

21

22

1  point, but does not believe that the reductions above are adequate given her limited

2  success.[5]

3          Indeed, despite her limited success in the due process hearing, L.P. still claims

4  100 % of the 113.9 hours necessary to prosecute the due process case, plus 17 additional

5  miscellaneous, multi-task hours, for a total of 100 % of 130.9 hours.  She also claims

6  100 % of the 13.7 hours spent defending against the District's discovery motion.  The

7  court agrees that L.P. should receive 100 % of her fees with respect to her successful

8  defense of the District's discovery motion.  However, given her limited success overall,

9  her claim for 100 % of the 130.9 hours necessary to prosecute the due process case and

10  other miscellaneous items is excessive and should be reduced.  Although L.P. prevailed

11  on the overarching legal issue that the District failed to provide a FAPE to Z.P.S., she did

12  so based on only three of the underlying 42 sub-issues identified by the ALJ.  Although

13  she obtained a portion of the remedies she requested, her recovery was also limited in

14  comparison to her requests.  Finally, the court cannot disregard that the District prevailed

15  on the final overarching issue identified by the ALJ concerning whether the District's

16  evaluation of Z.P.S. was appropriate and whether it should be required to pay for an IEE.

17  Accordingly, the court concludes that L.P.'s claim for 100 % of the above 130.9 hours

18  should be reduced by 33.33 % to reflect her overall limited success, as well as the

19  District's success with respect to the final issue.

20

21  _____

22      [5] The District has not challenged L.P.'s attorney's billing rate of $200/hour, and based on
    the evidence submitted, the court concurs that this is a reasonable rate for this case.

ORDER- 17

1    In addition to considering L.P.'s limited success, the IDEA allows the court to

2    reduce the amount of a fee award where the court finds that "the parent, or the parent's

3    attorney, during the course of the action or proceeding, unreasonably protracted the final

4    resolution of the controversy." 20 U.S.C. § 1415(i)(3)(F)(i). In addition to a 33.33 %

5    reduction for her limited success at the due process hearing, the court finds that an

6    additional 20 % reduction to these hours is warranted as a result of the ALJ's finding

7    concerning L.P.'s credibility. The ALJ specifically found that L.P. was not truthful with

8    respect to the reasons she removed Z.P.S. from school. (Admin. Order at 6, ¶ 1; *id.* at 51,

9    ¶ 300.) The court is gravely concerned by the ALJ's findings in this regard. There is no

10   doubt that a lack of candor on the stand from a witness—particularly one who is also a

11   complaining party—will unreasonably prolong a proceeding. Thus, the court will further

12   reduce L.P.'s claim for 100 % of the 130.9 hours referenced above by an additional 20 %

13   for a total reduction of 69.8 hours. Thus, instead of being reimbursed at 100 % for 130.9

14   hours, L.P. will be reimbursed at 100% for only 61.1 hours.

15   Finally, the court also denies L.P.'s claim in total with respect to the 3.7 hours her

16   attorney spent on the motion for a continuance. The court finds that these hours also

17   should be eliminated under 20 U.S.C. § 1415(i)(3)(F)(i) because, by seeking the

18   continuance for disingenuous purposes, L.P. once again "protracted the final resolution of

19   the controversy." As discussed above, the ALJ's order indicates that L.P. sought

20   continuances under the guise of the District's pending reevaluation, which might resolve

21   the parties' disputes, but then chose to thwart that purpose by refusing to cooperate with

22   the process to complete an appropriate evaluation. (Admin. Order at 66, ¶ 51.) L.P.'s

1    arguments in response simply assert that the ALJ's conclusions in this regard were in

2    error.  The ALJ's order, however, has not been appealed and is taken as true for purposes

3    of this proceeding.

4          In sum, because L.P. is a prevailing party under the IDEA, the court will award

5    her fees in this action.  However, the court reduces her request for $34,447.00 in fees

6    because the initial reductions she incorporated were insufficient in light of her limited

7    success in the due process hearing and because she protracted the proceedings by her

8    disingenuous behavior in seeking continuances and her lack of condor on the witness

9    stand.  Based on the reductions detailed above, the court awards L.P. $19,747.00.[6]

10                        IV.     CONCLUSION

11         Based on the foregoing, the court GRANTS in part and DENIES in part both L.P's

12   motion for summary judgment and the District's motion for summary judgment with

13   respect to L.P.'s claim for attorneys' fees under the IDEA (Dkt. ## 10, 11).  The court

14   finds that L.P. is a prevailing party entitled to an award of fees under the IDEA, but

---

[6] The total of $19,747.00 reflects:  (1) 61.1 attorney hours as descrribed above at $200.00 per hour for a total of $12,220.00, (2) 13.7 attorney hours for the L.P.'s response to the District's discovery motion, for a total of $2,740.00, (3) 28.3 attorney hours for the summary judgment motion at $200.00 per hour, reduced by two-thirds, for a total of $1,867.00, and (4) 29.2 attorney hours for the post hearing brief, reduced by half, for a total of $2,920.00.

1   reduces her award to $19,747.00 based on her limited success at the administrative due

2   process  hearing and because she protracted the proceedings through her conduct.

3        Dated this 19th day of May, 2014.

4

5

6   _____

7   JAMES L. ROBART
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 20